JAMES E. GRAHAM, Appellee, *vs.* FRANK PETERS, Appellant.

*Opinion filed December 21, 1910.*

1. ELECTIONS—*canvass by judges is merely a count of the ballots.* The canvass by the judges of election is merely the count of the ballots, in which the judges credit to the several candidates the ballots which in the opinion of the judges should be counted for such candidates, and the return is a statement of such count, which is *prima facie* evidence of the result of the election.

2. SAME—*ballots are the original evidence of the votes cast.* The ballots are the original evidence of the votes cast at an election, and are better evidence of the result than the return, if they have been preserved in the manner required by the Election law, for the purpose of securing the integrity of the ballots in case there should be a contest.

3. SAME—*ballots not properly preserved will not prevail over undiscredited return.* If there is no evidence which casts discredit upon the judges' return, and the ballots have not been properly preserved and have been so kept that they might have been reached

by unauthorized persons, the ballots are not better evidence than the return.

4. SAME—*rule where both ballots and return are discredited.* If the evidence in an election contest shows that both the judges of election and the custodian of the ballots have failed properly to perform their duties, neither the return of the judges nor the ballots will prevail over the other but the result must be determined from a consideration of both, with all the facts and circumstances surrounding the case.

5. SAME—*provisions of statute for preserving the ballots must be substantially complied with, at least.* The provisions of the statute for preserving the ballots are directory, in the sense that the precise method prescribed is not essential if there is a substantial compliance and it is clearly proved that the ballots have been kept intact in the condition as when counted and have been protected from any opportunity to tamper with them.

6. SAME—*contestant has burden of showing that ballots have been kept intact.* In an election contest the contestant is the moving party, and the burden is upon him to show that the ballots have been kept intact substantially as required by the statute and preserved in such a way that there was no reasonable opportunity to tamper with them, otherwise they cannot overcome the return.

7. SAME—*proof that ballots were kept inviolate must be clear if statutory method is not followed.* If the method pointed out by the statute for keeping the ballots inviolate is not pursued, the evidence must be clear and satisfactory that the method actually adopted was such that there was no reasonable opportunity for unauthorized persons to deal with them.

8. SAME—*when the court is not justified in accepting ballots as better evidence than return.* A disregard of the provision of the statute requiring a wax impression seal is of itself not conclusive against the ballots as evidence, but unless the proof is clear that the ballots were so kept as to prevent any reasonable opportunity of tampering with them, the court is not justified in ordering a re-count of the ballots and basing its decision on such re-count, contrary to the return of the judges, which is unimpeached.

APPEAL from the County Court of Sangamon county; the Hon. GEORGE W. MURRAY, Judge, presiding.

ANDRUS & TRUTTER, (SIDNEY S. BREESE, of counsel,) for appellant.

GRAHAM & GRAHAM, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At an election held on April 5, 1910, in the town of Illiopolis, in Sangamon county, the appellant, Frank Peters, and the appellee, James E. Graham, were rival candidates for the office of collector. The ballots were canvassed, and the result determined was that the appellant had received 163 votes and appellee 162 votes, and a return was made accordingly. The appellant received a certificate of election and qualified as collector. Appellee filed in the county court his petition for a contest, alleging that ballots were counted for the appellant which should not have been, counted and others were not counted for appellee which should have been counted for him. The petition was answered with a denial of any errors in the canvass, and the issue coming on for hearing, the court, against the objection of appellant, ordered a re-count of the ballots, and, after deciding disputes between the parties based on the appearance of certain ballots and the manner in which they were marked, found that 161 legal votes were cast for the appellee and 159 for the appellant. It was thereupon adjudged that the appellee was duly elected collector, and the court ordered that a proper certificate of election be issued to him and the certificate of election issued to the appellant be canceled and annulled.

The appellant questions the ruling of the court in refusing to count for him certain ballots which the court concluded were defectively marked and counting for appellee a ballot which was alleged to have a distinguishing mark, and the appellee questions rulings in counting a ballot for the appellant which it is claimed had a distinguishing mark, and another in which a judge of the election wrote his initials and by mistake one of the three initials was a different letter, but the principal controversy is whether the ballots ought to prevail over the return of the judges.

The rules of court by which courts hearing election contests are to be governed have been stated in various cases. The canvass by the judges of election is merely a count of the ballots, in which the judges credit to the several candidates the ballots which in their judgment ought to be counted for them, and the return is a statement of such count. The return is *prima facie* evidence of the result, but the ballots are the original evidence of the votes cast, and are better evidence of the result if they have been preserved in the manner required by the Election law, for the purpose of securing the integrity of the ballots in case there should be a contest. The statute provides that they shall be strung upon a piece of flexible wire and the ends united in a firm knot, sealed in such a manner that it can not come untied without breaking the seal. The ballots so strung are to be enclosed in a secure canvas covering recurely tied and sealed with official wax impression seals in such manner that it cannot be opened without breaking the seals. The ballots in the canvas covering are then to be returned to the proper clerk, who is required to preserve them carefully. The question whether they shall prevail in a contest over the return is to be determined by considering whether they have been preserved in substantial compliance with these requirements or have been so exposed to the reach of unauthorized persons that they may have been changed or tampered with. If there is no evidence which would cast discredit upon the return and the ballots have not been properly preserved but have been so kept that they might have been reached by unauthorized persons, they will not be regarded as better evidence than the return. (*Eggers* v. *Fox,* 177 Ill. 185; *Murphy* v. *Battle,* 155 id. 182; *Beall* v. *Albert,* 159 id. 127; *Bonney* v. *Finch,* 180 id. 133; *Caldwell* v. *McElvain,* 184 id. 552.) Where the evidence shows that both the judges of election and the custodian of the ballots have failed properly to perform their duties, neither the return of the judges nor the ballots will pre-

vail over the other, but the result must be determined from a consideration of the return and the ballots, with all the facts and circumstances surrounding the case. (*Catron* v. *Craw,* 164 Ill. 20; *Jeter* v. *Headley,* 186 id. 34; *Caldwell* v. *McElvain, supra.*) The provisions of the statute for preserving the ballots are directory in the sense that the precise method prescribed is not essential if there is a substantial compliance and it is clearly proved that the ballots have been kept intact in the same condition as when counted and protected from any opportunity for interference with them. The contestant is the moving party, and the burden is upon him to show that the ballots have been kept intact substantially as required by the statute and preserved from any opportunity to tamper with them. It is not incumbent on the defendant to show that they have been changed, and unless the contestant shows that they have been kept in such a way that there was no reasonable opportunity for tampering with them, they cannot overcome the return. (*Kingery* v. *Berry,* 94 Ill. 515; *West* v. *Sloan,* 238 id. 330; *Jeter* v. *Headley, supra.*) In this case there was no evidence tending to show any fraud or improper conduct on the part of the judges of the election or any negligence in the manner in which the ballots were canvassed and the return made, so that the return was unimpeached, and there was no ground for the application of the rule that the result was to be determined from a consideration of both a discredited return and discredited ballots.

The facts concerning the preservation of the ballots are as follows: After they had been counted by the judges they were strung on a wire and the ends of the wire were twisted and sealing wax was placed thereon as required by the statute. The ballots were then put in a canvas sack, and the wire was run through the cloth and wrapped around the neck of the sack and sealing wax was placed on the wrapping. There was no official wax impression seal as required by law, applied in such a manner that the

sack could not be opened without breaking such seal, but the wax was applied without any seal, in such a manner that it would have to be broken to open the sack but could be replaced without any certain means of showing the fact. The judges took the sack containing the ballots with the intention of delivering them to the town clerk, but he was playing in a band in the street and they delivered the ballots to the supervisor, who kept a store in the village, and he locked them in his desk in the store. The next morning the supervisor delivered the sack to the town clerk, who kept a bakery, and called the attention of the clerk to the fact that the seal was in the same condition as when he received the sack. When the sack was delivered to the clerk he placed it in a wooden box which had a lid but was not fastened in any way, and put the box on a shelf back of the counter in his store and bakery. There were two keys to the bakery,—one carried by the owner and the other by his baker, who usually came down to the bakery before the owner. The ballots remained in that condition and place about two weeks, when they were delivered to the newly elected town clerk, and he took them to a grain office where he was employed and put them in a safe. They remained in the safe in the sack three days, when the sack was taken out and put in a ballot-box in the grain office, under a desk. Four persons had keys to the office and business was transacted there and meetings of the school board held. The sack remained there about a week, when it was taken to a bank and placed in a vault to which three persons had access. When the sack was produced in court the seal was cracked, and the second town clerk testified that he accidentally cracked it while the ballots were in his possession. Both the town clerks, the supervisor, and a night watchman who had a key to the bank, each testified that he did not tamper with the ballots nor know of any one else doing it, but no one else who had access to the various places where the ballots were kept testified in the case.

There was a disregard of the provision of the statute requiring wax impression seals, which would have prevented opening the sack without breaking the seals, which could not be restored, and although that fact was not conclusive against the ballots as evidence, it was incumbent upon the appellee, in the absence of the seals, to prove that the ballots had been so kept that no reasonable opportunity was afforded for tampering with them or changing them. He attempted to do that with the testimony of the various officials who had the custody of the ballots and who felt sure that they had not been interfered with in any manner, but whose testimony showed that the ballots were sealed and kept in such manner that they might have been tampered with or changed and the wax restored in such a way as to present no appearance of the fact. If the method pointed out by the statute for keeping the ballots inviolate is not pursued, the evidence must be clear and satisfactory that the method actually adopted was such that there was no reasonable opportunity for unauthorized persons to interfere with them. We are of the opinion that the ballots were not kept in such a way as to authorize the court to order a re-count and to base a decision upon the result of such a re-count contrary to the return of the judges of election.

The county court appointed tellers for the re-count of the ballots and taxed charges for their services as costs. There is no authority in the statute for the taxation of costs for such services, and inasmuch as costs can only be allowed as provided by statute, the court erred in taxing costs for the services of the tellers.

The judgment of the county court is reversed.

*Judgment reversed.*