(No. 12998.—Reversed and remanded.)
WALTER L. STRUBINGER, Appellant, *vs.* OTIS O. OWNBY, Appellee.

*Opinion filed December 17, 1919.*

1. ELECTIONS—*ballots are the best evidence in an election contest.* In an election contest the ballots are the original evidence of the votes cast and constitute the best evidence of the result, and if it clearly appears that they are in the same condition as when counted by the judges of election.the count made by the court must prevail and any discrepancy must be attributed to errors of judges.

2. SAME—*burden is on contestant to show ballots have been properly preserved.* In an election contest it is not required of the candidate declared elected that he show that the ballots offered to impeach his title have been changed, but it is incumbent upon the contestant to show that the ballots have been so kept that there has been no reasonable opportunity to tamper with them.

3. SAME—*what does not destroy evidentiary value of ballots in contest.* . The fact that the ballots have not been strung, sealed and kept in the manner required by statute is not conclusive against their weight as evidence in a contest of the election, and the failure to deliver the ballots to the town clerk within the time required by law does not destroy their evidentiary value, where it is shown there has been no reasonable opportunity to tamper with the ballots in the place where they were kept.

APPEAL from the County Court of Pike county; the Hon. BURR SWAN, Judge, presiding.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellant.

WILLIAM & BARRY MUMFORD, and LEE CAPPS, for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

At the town meeting held in the town of Derry, in Pike county, on April 1, 1919, Otis O. Ownby was declared elected supervisor by a majority of eleven votes over his opponent, Walter L. Strubinger. The latter contested the

election, alleging various irregularities in the conduct of the election and errors in counting the ballots. The cause was heard, the ballots were opened and counted, 10 ballots were rejected by agreement, 164 were marked for the contestant and 157 for the respondent, but the court rendered judgment in favor of the respondent and the contestant appealed.

The appellant insists that there were irregularities in conducting the election and making the returns which discredit the returns; that the result of the election should be determined by the ballots, and that the appellant should have been declared elected.

George Motley, the supervisor who had just been defeated at the primary by the appellant, and William B. Ownby, brother of the appellee, were two of the judges of the election. There were two men named Smith, one of whom signed the oath in the poll-books as judge and acted as clerk, while the other signed the oath as clerk and acted as judge. The oaths in the poll-books were signed by the judges and clerks of election, respectively, and the jurats bear the signature "M. M. Shinn." There was no person of that name in the town. Mac Shinn, a justice of the peace, administered the oath to Motley and to two of the others who acted as judges and clerks but he did not sign any jurat. He went away and Motley administered the oath to the others who had not previously been sworn. He signed no jurat, but the jurats attached to the respective oaths were all filled out by some other person and signed with the name of M. M. Shinn. There was no proclamation at the opening of the polls, no cards of instruction were posted, specimen ballots were refused to voters. W. B. Ownby, one of the judges, indorsed his initials on all the ballots which were handed out, keeping a supply ahead, and when he went to dinner Motley handed out ballots on which Ownby had indorsed his initials, and there were some unused ballots when the polls closed bearing Ownby's initials.

Several voters were assisted in marking their ballots, but no affidavit was required of them, no inquiry was made as to the necessity for such assistance, a single judge went into the booth to assist the voter and no notation of the fact of such assistance was made in the poll-book. After the polls closed the votes were counted. One ballot was rejected but was not kept separate from the ballots which were counted and none of the ballots were strung. No proclamation was made of the result of the election, as required by the statute, though Motley went to the door and told anyone who wanted to know how many votes each of the candidates for supervisor received. None of the judges signed the returns of the election. The clerks filled out the certificates in the back of the poll-books and each one wrote all the signatures to the certificate he filled out. This was done in the presence of all and with their consent. The ballots and the returns of the election were not delivered to the town clerk, as required by law. When the judges had finished counting the votes, all the ballots, poll-books and tally-sheets were placed in the ballot-boxes, which were locked and were left in the room where the election had been held, Motley keeping the keys to the boxes. They remained in that room until the following Saturday, when the returns were canvassed by the supervisor, assessor and town clerk, and the ballot-boxes and their contents were then delivered to the town clerk and afterwards remained in his custody.

The room in which the election was held was used as a warehouse by E. T. Strubinger, the appellant's father. E. T. Strubinger was conducting a general store, and the warehouse, which was just across the street, was used to keep his reserve stocks of merchandise. After the election the room in which the ballot-boxes containing the ballots and the returns were left was unlocked for about an hour, when it was locked by the appellant. The key to this room was kept in the store and no one had access to the ware-

house except the appellant, who was a clerk in the store, and his father. There was another clerk, but he was at home sick from Tuesday until Saturday, and the appellant's sister, who kept the books, did not go to the warehouse. If there was occasion to go to the warehouse to get goods the appellant or his father went over and got them, but neither of them remembered having been in the warehouse after the election while the ballot-boxes were there, and they did not handle or interfere with the boxes or their contents.

The ballots are the original evidence of the votes cast at an election and upon a contest constitute the best evidence of the result, provided they are in the same condition as when first counted. The fact that they have not been strung, sealed and kept in the manner required by the statute is not conclusive against their weight as evidence, but the burden is upon the contestant to show that the ballots are those cast at the election and in the same condition as when cast. It is not required of the candidate declared elected to show that the ballots offered to impeach his title have been changed, but it is incumbent upon the contestant to show that they have been so kept that there has been no reasonable opportunity to tamper with them, otherwise their effect as evidence is destroyed. (*West* v. *Sloan,* 238 Ill. 330; *Graham* v. *Peters,* 248 id. 50; *Rottner* v. *Buchner,* 260 id. 475.) However, when the ballots are produced in court, if it clearly appears that they are in the same condition as when counted by the judges the count made by the court must prevail, and if there is any discrepancy it must be attributed to the errors of the judges. The ballots of this election were securely locked in the ballot-boxes, of which one of the judges of election, the supervisor of the township, alone had the keys. His failure to deliver them to the town clerk within the time required by law did not destroy their evidentiary value. No one else had access to the boxes except the appellant and his father. They had no access to the contents of the boxes, the keys of which

they did not retain.   Each testified that he did not remember to have seen the boxes and did not touch or handle them, and their testimony is not contradicted or impeached in any way.   Unless their evidence is to be entirely disregarded and it is to be held that the physical possibility of picking a lock and changing the ballots creates an irrebuttable presumption against the integrity of the ballots, this evidence sustained the burden of showing the ballots were unchanged.

The court erred in disregarding the evidence of the ballots, and the judgment will be reversed and the cause remanded, with directions to render judgment in favor of the appellant.    *Reversed and remanded, with directions.*