(No. 20104.—

J. P. HALEY, Appellant, *vs.* FRANK REIDELBERGER, Appellee.

*Opinion filed June 20, 1930.*

HAROLD J. BANDY, for appellant.

GRIFFITH & LUEDERS, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a judgment of the county court of Madison county declaring appellee elected to the office of police magistrate of the city of Venice. Appellant, also a candidate for that office, filed a petition in that court contesting the election of appellee. A municipal election was held on April 16, 1929, for the purpose of electing a mayor, city clerk, police magistrate and one alderman for each of three wards of the city. Two tickets were presented to the voters at that election. The Progressive Labor party submitted a complete ticket while the Independent party submitted but one candidate—the appellant, who was a candidate for the office of police magistrate. The official returns of the election judges and clerks showed that appellee received 707 and appellant 698 votes. Appellee, on canvass of the votes by the city council, was declared elected. On April 29 appellant filed the petition herein. Appellee demurred to the petition and moved to strike the affidavit attached thereto. The demurrer was sustained and the motion to strike was allowed and appellant was given leave to file, and filed, an amended petition. To this petition appellee filed a motion to dismiss on the ground that it was not filed within thirty days after the date of the election. This motion was denied and appellee filed an answer to the amended petition. The grounds of the contest set out in the petition are, that votes were incorrectly and fraudulently counted for appellee, that votes cast for appellant were counted for appellee and that votes not cast for appellee were counted for him. The petition prayed a recount of the ballots. The ballots were opened and recounted in open court by attorneys for the respective parties. They were all counted twice, and it was agreed by counsel for both parties that of the undisputed ballots appellant had received 696 and appellee 694. There were seventeen

disputed ballots, nine in the first ward, six in the second and two in the third. The court, on examination of the disputed ballots, counted twelve of them for appellant and five for appellee, with the result that appellant was shown to have received 708 votes and appellee 699. It appears, however, that after the testimony was taken and the ballots were counted the court of its own motion, notwithstanding counsel were in agreement as to all ballots but seventeen, examined a number of the ballots and held that the ballots themselves showed that certain of them had been tampered with—that at least there was a question as to whether they had been marked by others than the voters voting them—and refused to accept the ballots as evidence, finding appellee elected on the returns made by the judges and clerks, and this notwithstanding the court also found that "the evidence shows that the packages containing the ballots were in the same condition when they were produced in court as they were the night they were delivered to the clerk." The city clerk and the judges, and a part of the clerks of election, were called as witnesses before the ballots were opened in court. Each of the judges testified that the packages and seals thereon were then in the same condition as when turned over to the city clerk by the witness and that the seals showed they had not been broken. The judges and clerks testified that no marks had been placed on the ballots between the time they were cast and the time they were sealed up in the envelopes, though as to several ballots two of the witnesses testified that they were not marked as they appeared at the time of the trial. It is clear these witnesses had no way of distinguishing these ballots and were testifying only from their recollection.

The city clerk testified that the envelopes containing the votes of the three wards were delivered to him on the evening of the election; that from that time until he delivered them to the county clerk on order of the court the ballots had been in his possession, and the envelopes had not been

changed or tampered with, the seals had not been broken and the envelopes had not been out of his possession. He testified that when the packages containing the ballots and tally-sheets were delivered to him he placed them in a closet at his home; that the only occupants of his home were himself and his wife; that he kept them in the closet until he delivered them to the county clerk; that none of the packages were opened or the contents changed while in his possession and appeared in the same condition when shown to him on the witness stand as when they were delivered to him by the election judges. He testified that after receiving the ballots, and while they were still in his possession, he and his wife went away on a vacation for two weeks; that during that time the doors and windows of the house were locked and the basement doors were nailed, and that upon his return he did not then, or at any time thereafter, see any evidence that his home had been entered. He testified that he left the key to the house with his father during that time. His father testified that on one occasion when his son was away he went to a room in the basement of the house, where his son had his office, to procure some license blanks for use at the city hall; that he did not go upon the floor on which this closet was situated, did not know the ballots were there and did not see them.

The evidence clearly shows, as the court found, that the ballots had not been tampered with after having been placed in the envelopes and sealed by the judges and clerks of election. There was no evidence whatever that the envelopes were not in the same condition when opened as when received by the city clerk, or any circumstances which might lead to such a conclusion. The ballots, under the statute, were admissible in evidence in any event, and their probative force depends upon the care with which they were preserved. (*West* v. *Sloan,* 238 Ill. 330.) The burden was upon appellant to show that the ballots were those cast at the election and that they were in the same condition as when

cast. To entitle the ballots to overcome the returns he must show that they have been so kept that there was no reasonable opportunity to tamper with them, otherwise their effect as evidence is destroyed. (*Strubinger* v. *Ownby,* 290 Ill. 380; *Rottner* v. *Buchner,* 260 id. 475; *Graham* v. *Peters,* 248 id. 50; *West* v. *Sloan, supra.*) In the instant case it clearly appears that the ballots were in the same condition when produced in open court as they were when counted by the judges. Under such proof the count made by the court must prevail and any discrepancy will be attributed to the errors of the judges. (*Strubinger* v. *Ownby, supra.*) While the ballots were not kept by the city clerk at all times under lock and key, with access thereto by no one else, this fact, under the proof in this case, did not destroy their evidentiary value. Notwithstanding this condition of the record and the stipulation of the parties as to agreed ballots the court held that a number of them had been tampered with, and, as we have stated, threw out all the ballots as evidence, holding that as the ballots had not been kept technically as required by law and had been tampered with, they were of no evidentiary value.

The court certified to this court seventy-five ballots upon which it appears to have based its determination to throw out the ballots as evidence. These ballots have been assembled in four packages, marked A-1 to A-13, B-1 to B-33, C-1 to C-18, and D-1 to D-11. It does not appear from the finding of the court that it was of the opinion that any of these ballots bore distinguishing marks, but the record indicates that it was the view of the court that crosses placed in front of the name of appellant had been placed there by some person other than the voter, or at least the markings on the ballots were so questionable, and that this was indicated by the character of the cross made when compared with other crosses shown on the ballot. An examination of these ballots discloses that of the seventy-five, twenty-one were marked only with a cross in the square in front of the

name of appellant and bear no other mark on the ballot. It is obvious, therefore, that as to each of these there is no method of determining that any of them were marked by more than one person and no basis for so supposing. One ballot has a cross in the party circle directly above appellant's name and a cross in the square before his name. He was the only candidate on the Independent party ticket. No other marks appear on the ballot and there is nothing on the ballot to indicate that the marks were placed thereon by more than one person. Forty of them show no evidence whatever of containing crosses of such different shapes or impressions as to indicate that they were placed thereon by different parties. Thirteen show some difference in the shape of the crosses and impressions of the pencil. None of the seventy-five, however, bear any indication that they were marked with pencils of different character, though difference in impression in the thirteen shows a difference in density of the cross. Such, it is well known, frequently occurs when crosses are made on a ballot by one person. Though a ballot having several crosses in the proper place shows part of them to have been made with a black pencil and others with an indelible pencil, this does not invalidate the ballot or indicate tampering with it and such ballot should be counted for the candidates for whom it is marked. (*Grubb* v. *Turner*, 259 Ill. 436.) The holding of the trial court that the ballots were lacking in probative value as evidence was without basis in fact, and it was error to refuse to consider them.

Appellee argues that the court erred in overruling his demurrer to the amended petition. No cross-errors are assigned on the record by appellee. After his demurrer was overruled he answered the petition and proceeded to a hearing. Appellee not abiding his demurrer and motion, waived objections to the sufficiency of the petition. *Jackson* v. *Winans*, 287 Ill. 382; *Arnold* v. *Keil*, 252 id. 340; *Kreitz* v. *Behrensmeyer*, 125 id. 141.

We are not advised whether the disputed ballots are among those certified to this court, as none of them are identified as such. Nor are there assignments of error raising exception to the disposition of the disputed ballots as counted by the trial court. Such count will therefore be taken as correct.

The judgment of the county court is reversed and the cause remanded to that court, with directions to enter judgment declaring that appellant has been elected to the office of police magistrate of the city of Venice.

*Reversed and remanded, with directions.*