(No. 25420.—

ALBIN ANDERSON, Appellee, *vs.* SYLVESTER WIERSCHEM, Appellant.

*Opinion filed February 21, 1940.*

WILLIAM M. GARVEY, and WILLIAM C. MOONEY, for appellant.

PAUL E. PRUTSMAN, and OSCAR R. LARAWAY, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

The appellee filed a petition in the county court of Will county to contest the election of the appellant to the office of supervisor of the town of Lockport at an election held on April 4, 1939. After the canvass of the vote, the canvassing board certified that the appellee had received 1805 votes and the appellant had received 1819. The petition alleges that in certain precincts ballots were counted for the appellant that should have been counted for the appellee and ballots were not counted for appellee which should have been counted. An answer was filed and a hearing had before the court. An order was entered directing a re-count of all the ballots cast at the election, which resulted in appellee being declared elected by a vote of 1798 to 1795. This appeal followed.

No objection is raised in this court to the rulings of the trial court concerning the correctness of the re-count of the ballots other than 24 ballots cast in the fourth precinct which have been certified here, together with the poll-books, tally-sheets and ballot-bag.

The only question in the case arises in the error assigned on the action of the court in counting the ballots from the fourth precinct of the town of Lockport, it being contended that the evidence shows that the ballots had been tampered with and that they had not been properly preserved and, therefore, were not the best evidence.

The return of the judges of election is *prima facie* evidence of the result of such election, but the ballots are the original evidence of the vote cast and the better evidence of the result, if they have been preserved in such a manner as to maintain their integrity as evidence. They are, under the statute, admissible in evidence, and their probative value depends upon the care with which they have been preserved. (*Alexander* v. *Shaw,* 344 Ill. 389; *Haley* v. *Reidelberger,* 340 id. 154.) To entitle the ballots to overcome the returns it is incumbent upon the contestant to show that they have been so kept that there was no reasonable opportunity to tamper with them, otherwise their effect as evidence is destroyed. *Alexander* v. *Shaw, supra; Strubinger* v. *Ownby,* 290 Ill. 380.

The ballot used at the election contains seven columns being designated from left to right, Republican, Democratic, Independent, Republican Independent, Citizens, Peoples and a blank. The names of four persons as candidates for the office of supervisor were printed in the party column as follows: Republican, Albin Anderson; Democratic, Sylvester Wierschem; Independent, Charles Harris, and Citizens, Norman Woock. The poll-book shows that 660 persons voted in the fourth precinct. The tally-sheet shows that, for supervisor, 657 valid votes were cast, 350 for Anderson,

283 for Wierschem, 9 for Harris and 15 for Woock. There were two ballots that were spoiled and not counted for any of the candidates. Of the ballots certified here, 20 appear on their face to be void as to supervisor because of crosses before the names of more than one candidate. Of these apparently void ballots 16 were marked for the appellant and a third candidate, and 4 for appellee and a third candidate. The remaining 5 were so marked as to take away one vote from the appellant and four from the appellee, resulting in a loss of 20 and 5 votes, respectively, in this precinct.

It was stipulated by the parties that the ballots were properly preserved from the time they reached the hands of the town clerk until the bag was opened in the county court.

Paul A. Anderson testified that he was Republican judge of election in the fourth precinct and the other judges were Serge Murer and Charles Harmon. That, after the ballots were counted, he strung them on a wire, put them in the bag and sewed it up, fixing the time at about 8:30 P. M. He stated that he did not seal the bag with wax because none had been furnished, and that the Democratic judge, Harmon, the clerks and watchers all left, leaving him and Murer alone and they stayed there with a man named Fred Johnson until between 9:30 and 9:45, when they left, drove to Johnson's house and then to the town clerk's office, where the bag was delivered about 10 P. M. He denied, on cross-examination, that he was out of the polling-place after the ballots had been counted until they left for the night. Serge Murer testified that he was a Republican judge of election in the fourth precinct and that after the ballots were counted, Anderson strung them, placed them in the bag and sewed it up, but it was not sealed with wax because none was furnished. That the other judge, clerks and watchers left shortly after 8:30, but that he and Anderson stayed to wait for Johnson who had the keys to his car. About 9:30 John-

son came back, they drove to his house and then to the town clerk's office to deliver the ballots. That all the parties who were at the polling-place, except Anderson, left at his suggestion. He did not remember any one coming to the polls after they closed, except Johnson, and that he knew the result of the election before he left. Paul Ostrom, the town clerk, testified that the bag was delivered to him by Murer and Anderson about 10 P. M., sewed but unsealed, and that they told him they were not furnished with wax. Charles Harmon testified to the effect that the count was completed about 8:15, that the clerks left immediately and he left about 8:30, at Murer's suggestion. That, in his recollection, the counting of the ballots was regular in all respects and there were only two ballots in which there was more than one vote for supervisor. Three watchers testified that they watched the ballots being counted and saw only two that were spoiled by the elector having voted for two candidates for supervisor. Maude Cash, a clerk, testified that Anderson left the polls after the ballots were counted and was called back by Murer, and that she saw the sealing wax when the bag of supplies was opened. A woman who stopped at the polling-place to inquire as to the result of the election testified that it was after 10:00 o'clock and Murer, Anderson and Johnson were there and she talked to them. She was corroborated in this by a friend who accompanied her.

The ultimate question for our decision is whether or not the probative value of the ballots certified to us for inspection is sufficient to overcome the poll-books and tally-sheets which are in writing and three copies of each of which are signed by six persons—i.e., three judges and three clerks of election, and which are, in all respects, regular and in due form. It is apparent from the record that nine persons participated in and observed the actual counting of the ballots and that all nine of them agreed, and six of them certified over their signatures, that there were only two

spoiled ballots. Thereafter, two men were left alone with these ballots and they were the only two who testified that the bag was even sewed. Admittedly it was not sealed, and these same two men said there was no wax among the election supplies, although one of the clerks testified to the contrary. Whether the bag was sewed or not, it is apparent to us, on actual inspection, that, in the absence of wax, it would have been a comparatively simple matter to open the bag and resew it. It is unimportant, however, to determine whether or not it was sewed and then opened and resewed, because it is obvious, on the face of the testimony of all witnesses, that these two judges had an ample opportunity to tamper with the ballots if they were so inclined. They not only had the opportunity, but plenty of time for the accomplishment of this purpose, and it is significant that there is at least some discrepancy in the evidence as to the length of time they stayed alone with the ballots. At any rate, when the bag was opened twenty-four ballots were found double marked for supervisor, in addition to the two which had been found so marked when the nine persons had examined them at the close of the polls.

The probability of so many persons overlooking so many double-marked ballots when they were being counted at the close of the polls is so remote, and the opportunity for tampering with the ballots themselves is so apparent, that we do not believe the probative value of those ballots is such as to overcome the official and duly certified returns of the election officials. The county court erred in giving them this effect and its judgment must be reversed.

The cause is remanded to the county court, with directions to credit the respective parties with the number of votes to which they are entitled, as shown by and upon the official returns of the election, and to enter judgment in accordance therewith.

*Reversed and remanded, with directions.*