(No. 20929.—

ELLER TALBOTT, Appellant, *vs.* GEORGE B. THOMPSON, Appellee.

*Opinion filed October 22, 1932.*

Jones, J., dissenting.

JUNE C. SMITH, for appellant.

E. M. PEAVLER, and GILBERT & GILBERT, (G. GALE GILBERT, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Eller Talbott and George B. Thompson were opposing candidates for the office of county clerk of Jefferson county at the general election held on November 4, 1930. The result of the canvass of the votes cast in the several precincts of the county was that Thompson had been elected. Talbott filed a petition in the circuit court of Jefferson county to contest the election. The court declared Thompson elected and Talbott prosecutes this appeal.

· The appellant, Eller Talbott, and the appellee, George B. Thompson, were respectively the candidates of the Democratic and Republican parties. At the time of the election the appellee was the county clerk of Jefferson county. The ballots and returns of the election were therefore returned to him and he retained possession of them in his official capacity until December 5, 1930, when, pursuant to an order of the circuit court, they were placed in the keeping of the clerk of that court. While the county clerk had possession of the ballots and returns, they were kept in a small room connected with his office. This room had no outside entrance and the door to the office was locked with a padlock to which there were only two keys, one carried by the county clerk and the other by his deputy.

When the ballots and returns were delivered to the county clerk, one bag containing ballots was not sealed. The judges and clerks of election of the particular precinct testified that they were unable to seal the bag because they had no sealing wax. In several other precincts the poll-books and tally-lists were placed in the bags with the ballots and sealed. These bags were opened by the county clerk in

order to withdraw the poll-books and tally-lists for the purposes of the canvass. The county clerk testified that the ballots were in the same condition when he delivered them to the clerk of the circuit court as when he received them.

The clerk of the circuit court placed the ballots and returns of the election at the end of the vault in his office. There was a table between the ballots and the door of the vault and old records and papers were placed under this table. The door to the vault had not been locked for years. The front door of the office had a lock to which the clerk, his deputy and the janitor had keys. Another door, which led to the court room on the floor above, was fastened on the office side with a bolt. The public was admitted to the vault and records kept in it were examined by not less than ten persons each day. From their desks, the employees in the clerk's office could look into the vault, but the table with the records under it obstructed their view and how a person near the ballots was occupied might not be discovered. About ten days after the clerk of the circuit court received the ballots and returns he transferred them to a vault in the Ham National Bank, across the street from the court house. The ballots were placed in a compartment in the rear of the vault. This compartment was approximately eight feet square and was separated from the remainder of the vault by a grill. The door to the grill was locked and the clerk of the circuit court retained custody of the key. The spaces between the bars of the grill were approximately two inches in width and part of the ballots were stacked against the grill and a hand could be inserted between the bars.

The janitor of the court house testified that he had a key to the county clerk's office but not to the adjoining room; that, while the ballots were kept in that room, he did not part with his key, nor admit any person to the office; that during the time the ballots were stored in the vault of the clerk of the circuit court he did not enter the vault;

that he retained sole custody of his key to the circuit clerk's office while the ballots were in the vault, except one night when, because of his absence from town, he left the key with his son, who was the sheriff of the county, and that no other person entered the office with his key. The clerk of the circuit court testified that in his opinion no person had tampered with the ballots while they were in his possession and that they were in the same condition when they were offered in evidence as when he received them. The testimony of the deputy clerk of the circuit court was to the same effect.

The county canvassing board found that the appellant received 5954 and the appellee 5963 votes at the election. At the opening of the trial the appellant offered the ballots in evidence. The appellee moved to exclude them on the ground that unauthorized persons had been afforded access to them. Disposition of the motion was reserved, without prejudice to either party, until after the ballots had been counted. An examination by the court of the bags containing the ballots followed and it disclosed that eight of the thirty-eight bags were open and unsealed. The open bags came from the following precincts: Second, Grand Prairie township; second, Rome township; second, McClellan township; second, Dodd's township; first, Elk Prairie township; first, Spring Garden township; tenth, Mt. Vernon township, and first, Webber township. The court then appointed a commissioner to count the ballots. The result of the re-count, exclusive of thirty-six ballots disputed with reference to their markings, and one hundred forty-four absent voters' ballots not bearing the initials of a judge of election, gave the appellant 5868 and the appellee 5864 votes. Of the thirty-six ballots whose markings were the subject of dispute, the court credited ballots 19, 22, 24, 26, 27, 30, 31, 32, 33, 34, 35 and 36, twelve in number, to the appellant, and ballots 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 17 and 18, fifteen in the aggregate, to the appellee.

Ballots 20, 21, 23, 25, 28 and 29 claimed by the appellant and ballots 1, 8 and 9 claimed by the appellee were rejected by the court. Of the one hundred forty-four uninitialed absent voters' ballots, fifty-four were marked for the appellant and ninety for the appellee. None of these ballots was counted or credited to either candidate. Upon the re-count of all the ballots thus completed, the appellant had 5880 and the appellee 5879 votes.

The re-count was rejected because the court found that the ballots had not been preserved as required by law, and that, lacking probative force, they could not overcome the result of the election as shown by the returns. The court further found that the ballots of nine absent voters had been cast in the first precinct of McClellan township; that these ballots had been placed in the ballot-box without the initials of a judge of election endorsed upon them, but that they were later withdrawn and so initialed; that there was no evidence for whom seven of the absent voters' ballots had been cast; that the action of the judges of election with respect to these nine ballots was unlawful; that the inter-mingling of the legal and illegal ballots made it impossible for the court to separate them; that the ballots in the ballot-box exceeded the names of voters on the poll-list by one; that the judges of election discovered a ballot marked for the appellee but not initialed by one of the judges; that this ballot was removed from the ballot-box and was not counted; that the returns of the precinct, based upon all the ballots, both legal and illegal, showed one hundred fifty votes for the appellant and fifty for the appellee; that the ballots and returns from the first precinct of McClellan town-ship were therefore impeached and left the number of bal-lots there cast for each candidate uncertain; that neither the ballots nor the returns from that precinct should be considered in arriving at the number of legal votes cast for each candidate, and that it appeared from the returns of the remaining thirty-seven precincts of the county that the

appellant had received 5804 and the appellee 5913 votes. The circuit court accordingly declared the appellee elected and the petition of the appellant was dismissed.

The first contention made by the appellant is that the circuit court erred in holding that the ballots had not been properly preserved and in consequence rejecting them as evidence of the result of the election. The returns of the judges and clerks are *prima facie* evidence of the result of the election, but the ballots are the original evidence of the votes cast, and, in case of a contest, are better evidence of the result if they have been preserved in the manner prescribed by the statute to secure their integrity. Section 27 of the Ballot law (Cahill's Stat. 1931, p. 1312; Smith's Stat. 1931, p. 1361) provides that the judges shall fold all the counted ballots in two folds and string them closely upon a single piece of flexible wire; that they shall unite the ends of the wire in a firm knot and seal the knot so that it cannot be untied without breaking the seal; that they shall enclose the ballots so strung in a secure canvas covering and securely tie and seal the covering with official wax impression seals in such a manner that it cannot be opened without breaking the seals, and that they shall return the ballots in the sealed covering to the proper clerk or board of election commissioners whose duty it shall be to preserve them carefully for six months unless at the expiration of that period an election contest shall be pending in which case the ballots must be preserved until the contest is finally determined.

The question whether, in an election contest, the ballots shall prevail over the returns must be determined by considering whether they have been preserved in substantial compliance with the requirements of the statute or have been so exposed to the reach of unauthorized persons that they may have been tampered with or changed. If the evidence casts no discredit upon the returns but shows that the ballots have been so kept that they may have been

reached by unauthorized persons, the ballots will not be re-garded as better evidence than the returns. (*Graham* v. *Peters,* 248 Ill. 50; *Caldwell* v. *McElvain,* 184 id. 552; *Bonney* v. *Finch,* 180 id. 133; *Eggers* v. *Fox,* 177 id. 185; *Beall* v. *Albert,* 159 id. 127; *Murphy* v. *Battle,* 155 id. 182). Where the evidence shows that both the judges of election and the custodian of the ballots have failed properly to perform their duties, neither the returns of the judges nor the ballots will prevail over the other, but the result must be determined from a consideration of the returns and the ballots, with all the attending facts and circumstances. (*Catron* v. *Craw,* 164 Ill. 20; *Jeter* v. *Headley,* 186 id. 34; *Caldwell* v. *McElvain, supra.*) The provisions of the statute for the preservation of the ballots are directory in the sense that the precise method prescribed is not essential if there is a substantial compliance and it is clearly proved that the ballots are in the same condition as when they were first counted. The contestant is the moving party, and the burden is upon him to show that the ballots have been kept intact. It is not incumbent on the defendant to prove that they have been changed, and unless the contestant shows that they have been kept in such a way that there was no reasonable opportunity for tampering with them, they cannot overcome the returns. (*Alexander* v. *Shaw,* 344 Ill. 389; *Haley* v. *Reidelberger,* 340 id. 154; *Kelly* v. *Brown,* 310 id. 319; *Clarke* v. *Bettenhausen,* 296 id. 373; *Strubinger* v. *Ownby,* 290 id. 380; *Dennison* v. *Astle,* 281 id. 441; *Rottner* v. *Buchner,* 260 id. 475; *Graham* v. *Peters, supra; West* v. *Sloan,* 238 Ill. 330). It is not necessary that an unlawful interference with the ballots should be shown, but it is enough, to invalidate them as evidence, that the opportunity for the interference of un-authorized persons existed. (*Rottner* v. *Buchner, supra*). If, however, the ballots are produced in court, and it clearly appears that they are in the same condition as when counted by the judges of election, the re-count made by the court

must prevail, and if there is any discrepancy it must be attributed to the errors of the judges. *Strubinger* v. *Ownby, supra.*

The appellant asserts in his brief that "The record in this case shows beyond any question that the ballots were in the same condition when they were offered in evidence as when counted by the judges," and, invoking the rules established by the foregoing authorities, he insists that the ballots are the best evidence of the result of the election and that they should overcome the returns of the election officers. The complaint respecting the preservation of the ballots is made by the appellee and it concerns the period of time they were in the possession of the clerk of the circuit court. The bags of ballots were placed between the farther end of a table and the opposite wall of the vault in the latter's office and were kept there about ten days. Old records occupied the space beneath the table and obstructed a view of the bags. The door of the vault was never locked and persons desiring to examine the public records in the vault did so without restraint. The ballots in the unsealed bags were readily accessible by unauthorized persons. The evidence fails to show that the ballots were so kept that no reasonable opportunity to tamper with them was afforded. Hence the appellant has not sustained the burden of proving that the ballots in the unsealed bags were in the same condition when offered in evidence as when they were cast.

It is argued by the appellant, however, that the re-count of the ballots shows that in the eight precincts in which the bags were open the difference between the returns of the judges and the re-count is negligible and indicates that the ballots were not tampered with and that the re-count should prevail over the returns. The opportunity for interference with the ballots in the unsealed bags existed and proof of actual tampering with the ballots was not necessary. No evidence was adduced to discredit the returns from these precincts. The finding of the court that the ballots from the

eight precincts, kept in the vault of the circuit clerk's office in open bags and accessible to whomsoever might enter, were not preserved as required by the statute and for that reason did not overcome the returns of the judges is sustained by the evidence.

The appellant contends that the court erred in rejecting both the ballots and returns from precinct No. 1 in McClellan township. Nine absent voters' ballots were cast in this precinct. One of the judges testified that after the polls were closed he thought he endorsed his initials upon a part of these ballots before all were deposited in the ballot-box. Another judge testified that he was not certain whether a judge's initials had been endorsed upon the absent voters' ballots at the time they were so deposited. When the box was opened a number of ballots at the top bore no such initials. These ballots were withdrawn, one of the judges endorsed his initials upon them and they were again placed in the box. Among the nine absent voters' ballots were two cast by Henry Peterson and Cora Peterson, his wife. They had moved from the county prior to the day of the election, and were affiliated with the Democratic party. The evidence fails to show for whom the remaining seven absent voters' ballots were cast. Upon counting all the ballots in the precinct, including those cast by absent voters, it was discovered that the box contained one ballot in excess of the names on the poll-book. The judges found a ballot without the initials of one of their number endorsed upon it. This ballot, which the voter had marked for the appellee, was not counted.

The returns showed that in the first precinct of McClellan township the appellant received one hundred fifty, and the appellee fifty, votes. The appellee insists that the circuit court properly rejected both the ballots and the returns from this precinct because, he argues, there was no way of separating the legal from the illegal ballots. The appellant answers that the manner in which the nine absent voters'

ballots were endorsed with a judge's initials and the un-initialed ballot marked for the appellee was withdrawn did not so contaminate the remainder of the ballots cast in the precinct that all the ballots and also the returns should be discredited and two hundred legal voters disfranchised; that the ballots deposited in the ballot-box, without the initials of a judge of election endorsed upon them, the number of which he asserts, does not exceed five, should be apportioned between the two candidates on the basis of the whole number of votes received by each in the precinct, deducting in consequence, four from the appellant's and one from the appellee's total.

The assumption that the number of absent voters' ballots originally deposited in the box without a judge's initials did not exceed five, has no substantial support in the evidence. One judge of election merely thought he endorsed his initials upon a part of the absent voters' ballots while another was not certain whether any of these ballots bore such initials when they were placed in the box the first time. A judge of election who, in obedience to the mandatory provision of the statute, started to endorse his initials upon nine absent voters' ballots, would hardly abandon the performance of that duty when he had endorsed only four. The inference to be drawn from the evidence is that none of the absent voters' ballots was endorsed by a judge of election until after all these ballots first had been placed in the box and then withdrawn therefrom.

The omission to endorse a judge's initials upon the ballots of the absent voters could not be supplied or corrected after the ballots once had been deposited in the box. Two of these ballots were cast by Henry Peterson and Cora Peterson and while the evidence fails to show directly for whom they voted, it proves clearly that they were affiliated with the same political party as the appellant. Proof of the party affiliation of a voter raises a presumption that he cast his ballot for the nominees of his political party, and,

in the absence of countervailing proof or circumstances, is accepted as determining for whom the ballot of such voter was cast. (*Rexroth* v. *Schein,* 206 Ill. 80; *Sorenson* v. *Sorenson,* 189 id. 179; *Widmayer* v. *Davis,* 231 id. 42). The evidence fails to show for whom the other seven absent voters' ballots were cast. Where the evidence does not disclose the candidates for whom illegal votes were cast, such votes will be eliminated by dividing them between the candidates in the proportions that the number cast for each bears to the total cast in the precinct. (*Flowers* v. *Kellar,* 322 Ill. 265; *Humphrey* v. *Perry,* 310 id. 373; *Choisser* v. *York,* 211 id. 56; *People* v. *Cicott,* 16 Mich. 283; *Attorney General* v. *May,* 99 id. 538; *Russell* v. *McDowell,* 83 Cal. 70; *Heyfron* v. *Mahoney,* 9 Mont. 499; McCrary on Elections, (4th ed.) sec. 495). The ballot without a judge's initials endorsed upon it taken from the box to make the number of ballots agree with the number of names on the poll-lists was improperly withdrawn. One of the judges of election should publicly have drawn a ballot out of the box and destroyed the ballot. (Sec. 57, Elections act Cahill's Stat. 1931, p. 1282; Smith's Stat. 1931, p. 1304). It cannot be determined whether a ballot so withdrawn was cast for the appellant or the appellee, and it should therefore be apportioned in accordance with the rule above stated.

The bag which contained the ballots from the first precinct of McClellan township was sealed. Upon the re-count by the court's commissioner of the ballots from this precinct, the appellant received one hundred forty-nine, and the appellee forty-nine, votes. Henry Peterson and Cora Peterson had no right to vote in the precinct and their illegal votes, cast for the appellant, should be deducted from the number credited to him, reducing it to one hundred forty-seven. Adding the forty-nine votes which the appellee received makes one hundred ninety-six, the total of the votes cast in the precinct for candidates for the office of county clerk. The errors and irregularities of the judges

of election in this precinct do not justify the rejection both of the ballots and the returns and the consequent disfranchisement of nearly two hundred legal voters. By apportioning the seven uninitialed absent voters' ballots, with respect to which there is no evidence to show for whom they were cast, and the additional ballot which should have been withdrawn at random to make the ballots in the box agree in number with the names on the poll-lists, and eliminating these eight ballots from the poll, the returns will be purged of the errors made by the judges and the remaining one hundred eighty-eight votes will be counted. Apportioning the eight ballots in accordance with the rule stated results in a deduction of six votes from the appellant's total of one hundred forty-seven, and of two votes from the appellee's total of forty-nine, and accordingly the former will be credited with one hundred forty-one and the latter with forty-seven votes in the first precinct of McClellan township.

It is further contended by the appellant that the ballots of Ellen Rosenberger, Frank Kryger, John Buck, Roy Gilbert, Raymond Weilt and Al Franscovitch, all absent electors, were illegal and should be rejected because the affidavits upon which the ballots were issued did not comply with the provisions of the Absent Voters act (Cahill's Stat. 1931, p. 1291; Smith's Stat. 1931, p. 1390). Section 2 of the act provides that any elector expecting to be absent from the county of his residence on the day of election, may apply, not more than thirty days nor less than five days prior to such election, to the county clerk or, where existing, to the board of election commissioners, for an official ballot. The third section prescribes the form of the application. Section 4 provides, among other things, that immediately after the receipt of such an application, not more than thirty days and, if by mail, not less than five days, or by personal delivery, not less than three days, prior to such election, the county clerk or board of election

commissioners shall mail, postage prepaid, or deliver in person, an official ballot to be voted at the election. The pertinent part of section 6 requires that such absent voter shall make and subscribe to the affidavits provided for in the application and on the return envelope for the ballot before an officer authorized by law to administer oaths. Section 9 provides that at the close of the polls, the judges of election of each precinct shall proceed to cast the absent voters' ballots separately, and as each such ballot is taken shall open the outer or carrier envelope, announce the absent voter's name, and compare the signature upon the application with the signature to the affidavit on the ballot envelope, and in case they find the affidavits properly executed, that the signatures correspond, that the applicant is a qualified elector in the precinct and has not been present and voted within the county at the election, they shall open the envelope containing the ballot, without defacing or destroying the affidavit or marking or tearing the ballot, and take out the ballot without unfolding or permitting it to be unfolded or examined, and having endorsed the ballot in like manner as other ballots are required to be endorsed, deposit it in the ballot-box and enter the absent voter's name in the poll-book, the same as if he had been present and voted in person.

Ellen Rosenberger obtained an absent voter's ballot upon an application which she did not sign. Section 9 of the act requires the judges of election to compare the signature on the application with the signature to the affidavit on the ballot envelope. The judges must find, among other things, that these signatures correspond before the ballot may be deposited in the ballot-box. The voter made it impossible for the judges to perform this essential duty, and her ballot, counted for the appellee, should have been rejected.

The objections urged by the appellant to the counting of the ballots of Frank Kryger and John Buck for the appellee were that the affidavits had no venue; that the affi-

davits and applications did not give the information required by the statute; that they purported to be sworn to before one C. B. Anthony, a justice of the peace, and that the evidence showed no such person held that office in Jefferson county at the time the affidavits were made. The affidavits were entitled, "State of Illinois, county of Jefferson," and the deponents stated that they were residents of the town of Blissville, in Jefferson county; that they were lawfully entitled to vote at the election of November 4, 1930, and that in the course of their business or duties for Bert Bradford, in the city of Danvers, Illinois, they expected to be absent from the county of their residence on the day of the election. The applicants set forth in their applications that they resided in the town of Blissville, county of Jefferson and State of Illinois; that they were entitled to vote at the election on November 4, 1930; that they expected to be absent from the county and would have no opportunity to vote in person and that each made application for an official ballot, giving the post-office address to which the ballot was to be mailed. The affidavits and applications were signed and sworn to before C. B. Anthony, a justice of the peace, who stated in his certificate that he was an officer duly authorized under the law to administer oaths. The evidence relied upon to prove that Anthony was not a justice of the peace was the testimony of the appellant that he knew of no record in his office showing that a person by the name of C. B. Anthony held that office in Jefferson county in 1930. There was no proof that a search of the records had been made, and such a record might exist notwithstanding the appellant had no knowledge of it. The testimony was not sufficient to show that Anthony was not a justice of the peace at the time in question. While the applications and affidavits were somewhat informal, they were sufficient to entitle Kryger and Buck to absent voters' ballots and their votes were properly counted for the appellee.

The application and affidavit of Roy Gilbert were substantially the same as those of Kryger and Buck, except that Gilbert lived in another precinct and no question was raised respecting the authority of the justice of the peace to administer the oath. This ballot was properly counted for the appellee.

Raymond Weilt and Al Franscovitch, residents of the second and fourth Mt. Vernon precincts respectively, applied for absent voters' ballots on November 3, 1930, the day before the election. Both were affiliated with the Democratic party. Weilt testified that he voted for the appellee, but Franscovitch refused to state for whom he voted. The ballot of the former was counted for the appellee and of the latter for the appellant. The statute requires that an application for an absent voters' ballot, if made by mail, shall be presented at least five days, and if in person, at least three days, prior to the election. The county clerk had no authority to mail or deliver such a ballot on an application made the day immediately preceding the day of election. Neither of these ballots should have been counted and the appellant and the appellee will each, on that account, suffer the deduction of one vote.

Objections were interposed before the commissioner to the counting of thirty-six ballots. Of this number, the circuit court counted twelve for the appellant and fifteen for the appellee and rejected the remaining nine. The appellant contends that the court erroneously counted ballots 10, 11, 15, 17 and 18 for the appellee and refused to count ballots 20, 23, 25, 28 and 29 for the appellant. Cross-errors have been assigned by the appellee on the counting of ballots 22 and 24 for the appellant and the refusal to count ballots 1, 8 and 9 for the appellee.

Ballots 8, 9, 11, 17, 24, 25 and 28 were taken from open bags which, while kept in the vault of the circuit court clerk's office, were accessible by unauthorized persons. The returns from the precincts which produced these bal-

lots were not discredited; the ballots themselves had lost their superior evidentiary force, and to review them will serve no useful purpose. Ballots 1, 10, 15, 18, 20, 22, 23 and 29 were taken from bags which were properly sealed and require consideration. Ballot 1 has a cross in the Republican party circle and in the square opposite the name of each candidate under that party appellation. On the back of the ballot appear not only the initials of a judge of election but also the name of a third person. This name constitutes a distinguishing mark and the ballot was properly rejected. The party circles on ballots 10, 15 and 18 are blank. Within the square before the name of the appellee each of these ballots has pencil lines which intersect and constitute crosses. These ballots were properly counted for the appellee. (*Arnold* v. *Keil,* 252 Ill. 340; *Brents* v. *Smith,* 250 id. 521; *Slenker* v. *Engel,* 250 id. 499; *Parker* v. *Orr,* 158 id. 609). Ballot 20 has no mark or cross in any circle. A mark in the square opposite the appellant's name is not intersected and does not form or resemble a cross. The ballot was properly rejected. On ballot 22, over the printed names of the Democratic candidates, Jas. Hamilton Lewis, for United States senator, and William Henry Groves for sheriff, the names of Lottie Holman and Ed Fry respectively, were written. No crosses were made in the squares before the substituted names and the squares were mutilated. The distinguishing marks upon the ballot rendered it void and it was improperly counted for the appellant. Ballot 23 has a peculiar figure in the Democratic party circle drawn in heavy purple lines. Apparently the purpose was to erase rather than to make a cross. An irregular line, also made with a purple pencil, appears after the names of certain candidates. Ballot 29 has a cross in the Democratic party circle but on the back of the ballot, below "L. L. N.," the initials of the judge of election, the name "Joe Miller" was written. No cross appears either in a party circle or the square opposite the appellant's name

on ballots 23 and 29; these ballots bear distinguishing marks and both were properly rejected.

The returns from the eight precincts in which the ballots were discredited because they had been exposed to unlawful interference credited 1034 votes to the appellant and 967 to the appellee. The re-count of the remaining thirty precincts, exclusive of ballots disputed on account of the manner in which they were marked and absent voters' ballots without the initials of a judge of election endorsed upon them, gave the appellant 4844 and the appellee 4918 votes. These figures include one hundred forty-nine votes for the appellant and forty-nine for the appellee in the first precinct of McClellan township. Omitting that precinct, the re-count of the twenty-nine precincts remaining shows 4695 votes for the appellant and 4869 for the appellee.

The foregoing review shows that the following votes were cast for the appellant and the appellee respectively:

| | | |
|---|---:|---:|
| In the first precinct of McClellan township | 141 | 47 |
| By the returns from the eight precincts in which the ballots were discredited | 1034 | 967 |
| By the re-count of the unimpeached ballots from the remaining twenty-nine precincts | 4695 | 4869 |
| Disputed ballots counted by the circuit court, less ballot 22 which should have been rejected | 11 | 15 |
| Totals | 5881 | 5898 |

From these totals must be deducted the ballots of Ellen Rosenberger, Raymond Weilt and Al Franscovitch, which were erroneously counted, the first two for the appellee and the third for the appellant. The result is that the appellant received 5880 and the appellee 5896 votes, and that the appellee was elected by a majority of sixteen votes.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*

Mr. Justice Jones, dissenting.