(No. 23205.— )

J. Jay Bullman *et al.* Appellants, *vs.* Howard Cooper, Appellee.

*Opinion filed February 14, 1936.*

EDMUND D. ADCOCK, L. H. HANNA, and CHARLES E. LAUDER, for appellants.

JOHN J. RYAN, and ROSWELL B. O'HARRA, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

On April 2, 1935, an election was held for the office of supervisor of the town of Kelly, in Warren county. J. Jay Bullman and Howard Cooper were respectively the candidates of the Republican and Democratic parties. The result of the canvas of the votes was that Cooper received 158 votes and Bullman 157. One ballot was declared defective and not counted. Cooper qualified and assumed the duties of the office. The appellants, Bullman and Harry Anderson, a qualified elector, filed a petition in the county court of Warren county to contest the election. The petition was amended and the appellee, Cooper, answered the amended petition. After hearing evidence and a re-count of the ballots, the court found that all should have been counted, including the one which had been rejected as defective; that the ballots objected to by Bullman and Anderson should be counted for Cooper and that those attacked by Cooper should be counted for Bullman; that 159 votes were cast for Cooper and 157 for Bullman, and that none were improperly marked or bore distinguishing marks; that of four persons alleged to have been disqualified voters three were qualified, and one not qualified; that the latter voted for Cooper and that his vote should not be counted. The court found that Cooper received 158 and Bullman 157 votes and the former was declared to be legally elected to the office of supervisor. Bullman and Anderson prosecute this appeal.

A preliminary question is presented which requires consideration. Appellee makes the contention, among others, that the ballots were not properly preserved and that, with the exception of the ballot marked for identification as exhibit AAA, should not have been received in evidence. Appellants maintain that this court is precluded from considering errors on the re-count alleged to be favorable to Bullman owing to the fact that the appellee did not file a notice of cross-appeal. If a party has not obtained all that

he deems himself entitled to, he may appeal, but not when he receives all that he claims. (*Pelouze* v. *Slaughter,* 241 Ill. 215.) The final and appealable order rendered by the county court was that the appellee be declared elected to the office of supervisor of the town of Kelly, and for costs against the appellants. No part of this judgment was adverse to the appellee and, hence, he was not in a position to file a notice of or prosecute a cross-appeal. On the other hand he has the right in such cases to sustain the judgment upon any ground warranted by the record irrespective of whether the particular reasons given by the trial judge or his specific findings are correct. *Stewart* v. *Dodson,* 282 Ill. 192; *Pelouze* v. *Slaughter, supra.*

The evidence discloses that Kelly township is a rural township in the northeast portion of Warren county; that the town clerk received the ballots after they were counted on election night at the town hall; that they were delivered to him in a closed canvas sack, strung on a string which had a button at one end and a sealed knot at the other. The clerk was a farmer, who lived two or three miles from the town hall, his family consisting of himself, his wife, a daughter and a son, aged twenty and eighteen years, respectively. He arrived home late in the evening of April 2 and left the sack containing the ballots on the dining room table until the next morning, when he placed it in a box in a room adjoining his bed-room. The town clerk's supplies were kept in this room, access to which could be had only through the bed-room. The ballots remained in the box in the store-room until they were delivered to the sheriff five days later. The clerk testified that they were in the same condition when produced in court as when he had received them and delivered them to the sheriff. From his testimony it also appears that he remained at home every night while the ballots were in his custody and that he had most, if not all, of his meals there. There was no evidence that the town clerk's house had been entered by a stranger

while the ballots were in the possession of that officer. Nor was there any evidence tending to show that the ballots had been tampered with at any time since the voters cast them.

To sustain the judgment the appellee insists, however, that the ballots had not been properly preserved and that, in consequence, the trial court erred in admitting them as evidence of the result of the election. The question of the probative force of the ballots in an election contest depends upon the care with which they have been preserved. If it clearly appears that the ballots are in the same condition when offered on the hearing as when they were counted by the judges of election, the re-count made by the court must prevail, and any discrepancies in the votes certified will be attributed to the errors of the election officers. (*Bolton* v. *Whalen*, 350 Ill. 50.) Conversely, if the evidence shows that the ballots were exposed to the reach of unauthorized persons, and the returns are not discredited, the ballots will not be regarded as better evidence of the result of the election. (*Talbott* v. *Thompson*, 350 Ill. 86; *Bolton* v. *Whalen, supra.*) The provisions of the Ballot law for the preservation of the ballots are directory in the sense that the precise method prescribed is not essential if there is a substantial compliance and it is clearly proved that the ballots are in the same condition as when they were first counted. (*Talbott* v. *Thompson, supra; Alexander* v. *Shaw*, 344 Ill. 389.) The question whether the ballots have been properly preserved is in each action necessarily one of fact to be determined by the evidence. (*Sibley* v. *Staiger*, 347 Ill. 288.) In the present case the evidence shows that the ballots were not disturbed while they remained in the house of the town clerk; that after they were placed in the box it was not opened until its contents were delivered to the sheriff, and that the ballots, when produced in court, were in the condition in which the judges of election counted them. The county court properly admitted them in evidence.

The appellants contend that three ballots counted for the appellee, namely, A-17, A-18 and A-26, bore distinguishing marks which invalidated them. It is established that any deliberate marking of a ballot by a voter that is not made in an attempt to indicate his choice of candidates, and which is also effective as a mark by which his ballot may be distinguished, should be considered as a distinguishing mark. (*Stevenson* v. *Baker,* 347 Ill. 304.) Whether a given mark upon a ballot is a distinguishing mark is largely a question of fact to be determined from an inspection of the original ballot itself. (*Kerr* v. *Flewelling,* 235 Ill. 326; *Winn* v. *Blackman,* 229 id. 198.) If it appears that marks were placed thereon as the result of an honest effort by the voter to indicate his choice of candidates and not as an attempt to indicate the identity of the voter, the ballot should not be rejected for candidates for whom a choice is expressed according to law. (*Rexroth* v. *Schein,* 206 Ill. 80.) Ballot A-17 has a short, nearly vertical, line beginning a little to the right of the center of the circle at the head of the Republican column and trailing off vertically to a point a short distance below the lower rim of the circle. The only other mark on the ballot is a cross in the circle at the head of the Democratic column. From the face of this ballot it appears that the mark was accidental rather than deliberate and was not intended to distinguish the ballot. Ballot A-18 carries a cross in the circle at the head of the Democratic column. In addition a diagonal line appears in the square opposite the name of Cooper. An examination of the original ballot clearly shows attempts to rub it out. The diagonal line may well have been blurred in an effort to erase the line inadvertently or ignorantly made by the voter. Such a ballot may be counted. (*Atwater* v. *Eckard,* 282 Ill. 122.) Ballot A-26 carries a blurred diagonal line of the same character in the square before the name of Bullman. The attempted erasure is apparent on the face of the original ballot certified to this

court. This ballot contains two crosses, one in the Republican circle, and the other in the square in front of the name of Cooper in the Democratic column. The voter indicated his intention of casting his vote for Cooper and the line before Bullman's name was not a distinguishing mark. The objections of the appellants to the three ballots assailed were properly overruled.

The appellants attack the qualifications of voters Bertha Simcox, Mildred Caulkins and Clarence House. Bertha Simcox and Mildred Caulkins, each twenty-one years of age, commenced teaching school in Kelly township, in September, 1934. Prior thereto they lived with their parents in Mercer and Knox counties, respectively. Miss Simcox, called as a witness by the appellants, testified that since November, 1934, she had resided at the house of Bert Yarde, in Kelly township, and that she spent many of her weekends with her parents. On cross-examination by the appellee she stated: "It is my intention to make my home at the place where I am staying while I am working." She testified further that from November, 1934, until school was dismissed the following May, she considered Yarde's residence her home and place of residence, and that she expected to continue to live there as she had obtained a new contract to teach in the same school for the school year beginning in the fall of 1935. The appellants also called Miss Caulkins as their witness. During the school year she lived at the house of Vivian Petrie, in Kelly township. She, too, had renewed her contract to teach the same school during the next school year. The witness testified that she intended to make Kelly township her permanent place of abode, with the exception of week-ends, and that she expected to reside at Petrie's house when she resumed her duties the following fall. The trial judge held both witnesses to be qualified voters and sustained them in their claims of personal privilege to refuse to disclose for whom they had voted.

Clarence House testified on behalf of the appellee. He lived with his father on a farm in Kelly township until he was fifteen years of age. He later served twenty-six months in the army and was discharged at the age of twenty-one, having been wounded and gassed in France. Thereafter, he appears to have travelled extensively in the West in efforts to improve his health. House testified that he voted for the first time in Kelly township in 1921; that he had voted there for fourteen years, and, in particular, at every election since 1930. The witness stated that he considered Kelly township his home, and that there were several places in Kelly township where he could stay, including the homes of two brothers-in-law. It also appears that he spent some time at the home of a sister in another township. The evidence discloses that he kept a room at the home of Elmer Bridges, one of his brothers-in-law. Bridges corroborated House's testimony.

Section 66 of the Election law provides that a permanent abode is necessary to constitute a residence. (Ill. State Bar Stat. 1935, p. 1462; Smith's Stat. 1935, p. 1449.) The terms "residence" and "permanent abode" as employed in the statute have been construed as synonymous. (*Anderson* v. *Pifer*, 315 Ill. 164; *Johnson* v. *People*, 94 id. 505.) This court, in *Dale* v. *Irwin*, 78 Ill. 170, said: "It would be safe to say a permanent abode, in the sense of the statute, means nothing more than a domicile, a home, which the party is at liberty to leave, as interest or whim may dictate, but without any present intention to change it." The intention of a party has an important bearing on the question of residence, especially where the party is unmarried and has no family. (*Carter* v. *Putnam*, 141 Ill. 133.) The question of residence is largely one of intention, and a voter is competent to testify as to his intention, although such testimony is not necessarily conclusive. *Anderson* v. *Pifer, supra; Welsh* v. *Shumway*, 232 Ill. 54.

Although a proceeding to contest an election is statutory, the finding of the trial judge, who saw and heard the witnesses, will not be disturbed on appeal unless it is palpably against the manifest weight of the evidence. (*Baker* v. *Hinrichs,* 359 Ill. 138; *Porter* v. *Greening,* 347 id. 434.) The appellants vouched for and called as their witnesses the two young women whose votes they charged were illegally cast. Both testified that they considered Kelly township their place of residence while they were engaged in the pursuit of their duties as school teachers. Furthermore, they had obtained contracts to teach during the succeeding school term and they expected to continue to reside at the same places in the township. None of the witnesses called by the appellee testified with respect to their qualifications as voters. The presumption obtains that the votes cast by Bertha Simcox and Mildred Caulkins were legal, and this presumption continues until the contrary is shown. (*Gentry* v. *Reinhardt,* 350 Ill. 582; *Stevenson* v. *Baker, supra; Flowers* v. *Kellar,* 322 Ill. 265.) We cannot say that the trial court's finding that their ballots were legally cast was palpably against the manifest weight of the evidence. The record wholly fails to establish that Clarence House ever abandoned his original domicile in Kelly township. The finding that he was a qualified voter was correct.

Neither the claim of the appellants that votes were counted for the appellee which should not have been counted for him and should be deducted from his vote nor that votes were illegally cast can be sustained. Disposition of their contentions leaves the total votes for Cooper and Bullman unchanged.

The judgment of the county court is affirmed.

*Judgment affirmed.*