(No. 33087.—

FRED J. ARMBRUST, Appellee, *vs.* JESSE A. STARKEY, Appellant.

*Opinion filed May 24, 1954.*

MAYBERRY & THORNTON, of Lincoln, and ROBERT H. BRUNSMAN, of Springfield, for appellant.

HARRIS & HARRIS, of Lincoln, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellant, Jesse A. Starkey, and the appellee, Fred J. Armbrust, were opposing candidates for the office of supervisor of East Lincoln Township, Logan County, at an election held on April 7, 1953. A tabulation by the election judges of the ballots cast in the eight polling places in the township gave appellant 1052 votes and appellee 1050 votes. This return was confirmed by the canvassing board on April 9, 1953, and appellant was declared elected. Appellee filed a petition to contest the election in the county court; however, the cause was transferred to the circuit court of Logan County, on motion of appellant, and there heard by a judge residing outside the circuit. A recount was ordered, the result of which showed 1062 votes for appellee and 1044 votes for appellant. The cir-

cuit court thereupon entered an order declaring that appellee had received the highest number of votes and that he was the duly elected supervisor of the township.

On appeal to this court, appellant has assigned no error on the rulings as to ballots objected to, and it is conceded by both parties that the principal question for determination is whether the ballots were preserved in such a manner as to maintain their integrity as evidence. The law applicable when such an issue is raised is well settled and is succinctly summarized in *Rogers* v. *Meade*, 363 Ill. 630, at page 637, as follows: "The returns of the judges and clerks are *prima facie* evidence of the result of the election, but the ballots are the original evidence of the votes cast and in case of a contest are better evidence of the result if they have been preserved in the manner prescribed by the statute. (*Talbott* v. *Thompson*, 350 Ill. 86; *Graham* v. *Peters*, 248 id. 50.) Conversely, if the evidence discloses that the ballots were exposed to the reach of unauthorized person, and the returns are not discredited, the ballots will not be regarded as better evidence of the result of the election. (*Talbott* v. *Thompson, supra; Bolton* v. *Whalen*, 350 Ill. 50.) The question of whether the ballots have been properly preserved is in each action necessarily one of fact, to be determined by the evidence. (*Bullman* v. *Cooper*, 362 Ill. 469; *Sibley* v. *Staiger*, 347 id. 288.) The contestant is the moving party, and the burden rests upon him to prove that the ballots have been kept intact. It is not incumbent on the defendant to show that they have been changed, and unless the contestant shows that they have been kept in such a way that there was no reasonable opportunity for tampering with them they cannot overcome the returns. (*Talbott* v. *Thompson, supra; Bolton* v. *Whalen, supra; Alexander* v. *Shaw*, 344 Ill. 389; *Graham* v. *Peters, supra.*) Nor is it necessary that actual tampering with the ballots be shown, but it is enough to invalidate them as evidence that the opportunity for un-

lawful interference of unauthorized persons existed. *Talbott* v. *Thompson, supra; Alexander* v. *Shaw, supra; Rottner* v. *Buchner,* 260 Ill. 475."

In the present case, it is appellant's contention that appellee failed to maintain his burden of proving the integrity of the ballots, that the manifest weight of the evidence showed a reasonable opportunity of access and for interference by unauthorized persons and that, for these reasons, the court erred in ordering and allowing a recount of said ballots. It is urged that these features are particularly true of the ballots cast in precincts 8 and 2.

The facts attendant to appellant's contentions show that during the course of the evening of the election the ballots were returned from the respective polling places, by one or more of the election judges for each precinct, to Myrtle Montgomery, the town clerk, at her home in Lincoln. In all instances the ballots were returned in cloth sacks which were placed in separate boxes for each precinct, along with other election records and supplies, and, as she received them, the clerk placed the boxes on a studio couch in her dining room. The couch was next to a screened window, four feet above ground level, which was locked by a hook on the inside. The boxes remained on the couch until April 10, at which time the clerk put all eight ballot bags in a large feed sack, the tally sheets and other returns in one box, and placed both on the floor at the head of a bed in a first floor bedroom occupied by an invalid son. The sack and box remained there until May 18, on which date they were delivered to the county clerk, where they were locked in a separate, sealed bin in a record vault. Two days later they were delivered to the circuit clerk and remained in his custody until opened at the trial. This officer likewise kept the sack containing the ballots in a separate, locked bin located in his record vault. Although appellant presents some argument that the proof was not sufficient to show that the integrity of

the ballots was maintained while in the custody of the latter two officials, we think the manifest weight of the evidence is so to the contrary as to merit no detailed discussion in this opinion. Thus narrowed, the sole issue remaining is whether the ballots were properly preserved during the period they were in the custody of the town clerk.

The town clerk's home, which was, of necessity, also her office, is a one-story, five-room, frame house with a front and rear door. The front door opens into the living room, to the right of which is the bedroom occupied by her son and to the rear of which is the dining room, the kitchen and another bedroom. There is a basement from which there is access to the house proper, and it appears that a trap door on the back porch which leads to the basement has no lock on it. The clerk testified that the doors to the house were kept locked until the canvass was completed, but after that were allowed to remain unlocked during the daytime. After the ballots had been placed in her son's room, the clerk was absent from the house on many occasions during the daytime and the doors left unlocked. The only other member of the household was the clerk's invalid son, Roland Montgomery, age 43, who, although bedridden for fifteen years and unable to move his body or raise his head, possesses perfect eyesight and hearing and average intelligence. From his position in his bed he was able to view anyone who entered the front door or the living room and his mother's testimony was that he had said nothing about any person entering his room and disturbing the bag or box she had placed there. It was shown that the clerk had visitors and that the canvassing board met at her house prior to the time she placed the ballots in the son's room, but she testified that no one disturbed or examined them on any of such occasions.

There is no question but what the ballots from six of the eight precincts were sealed in the cloth sacks by the

respective judges and remained that way from the time of their delivery to the town clerk until opened in court. As to precinct 2, however, the clerk and Winfield Bates, an election judge, testified that when the ballot bag for that precinct was delivered to the clerk on election night, it was discovered that the poll book and tally sheets had been inadvertently sealed inside. Bates broke the seal, withdrew the records and, although he tied up the bag, did not reseal it. The clerk, however, did reseal it the following morning but did not otherwise disturb it. When Bates was shown the bag at the trial, he stated that it appeared to be in the same condition as when he handed it to the clerk, except for the seal.

When first testifying about the ballot bag for precinct 8, the clerk testified that it had been delivered to her unsealed on election night by Donald Laux, one of the precinct judges. On cross-examination, she stated that she could not say whether there was a seal on the bag but her best recollection was that it was unsealed and that she had not, at any time, sealed it herself or otherwise interfered with it. When the bag was produced in court it was sealed. The clerk returned to the witness stand and testified that she had not examined the bag at the time of its delivery and stated that her earlier testimony was based upon a conversation with appellant in which he told her Laux had told him the bag was not sealed. Further, at this time, she repeated that she had not sealed the bag or bothered it in any way during the time it was in her possession. When appellant, Starkey, testified, he stated that he had first learned that the bag was not sealed from the clerk herself, when he visited her home on May 15 for the express purpose of learning if any of the ballots had been delivered in other than a proper condition. His version was that his visit to Laux came after such occasion and that he could not recall any prior conversation with Laux on the subject. Laux testified that he had not sealed the

ballots of precinct 8 in the cloth bag and that it was unsealed when he delivered it to the clerk's home. Aside from the seal, however, he testified that the bag, as it was produced in court, was tied the way he had tied it on election night and that he could not point out anything different in its appearance. Two other election officials of the precinct related that they did not seal the bag and that they did not know whether or not it was sealed when it left the polling place. There was also some conflicting testimony as to whether it had ever been the custom of the officials in that precinct to seal the ballot bags.

The clerk was then recalled to the witness stand for a third time and testified that since her previous testimony she had examined the box of election supplies Laux had returned from the precinct and found a white candle of the type furnished the precinct officials; that the candle had been burnt and had red sealing wax smeared around the wick and its edges. Her further testimony was that the box containing the candle and other supplies had been stored in the basement of her home since the canvas on April 9, and that she had not examined the box from the time it had been returned to her until the day prior to her recall to the witness stand.

The first issue to be determined from the evidence is whether the bag containing the ballots for precinct 8 was in the same condition when produced in court as it was when delivered to the town clerk on election night. It is appellant's position that the manifest weight of the evidence is that the bag was unsealed when first received by the clerk but sealed when produced in court and, that under the authority of *Dennison* v. *Astle,* 281 Ill. 441, *Rogers* v. *Meade,* 363 Ill. 630, and *Sargent* v. *Newell,* 368 Ill. 479, such a change of condition is sufficient to destroy the integrity of those ballots as evidence. While the cited cases give support to the legal proposition contended for, it is our opinion that they have no application to the record

of this case. Whether the ballot bag of this precinct was sealed when delivered to the clerk and was in the same condition at that time as when produced in court is a closely contested question of fact, the solution of which is largely dependent upon the credibility of the witnesses and the weight to be afforded their testimony. As frequently stated, the trial judge, who observes the demeanor of the witnesses while testifying, is in a far better position to determine the weight and credit to be given their testimony than is a court of review, and, where the testimony is conflicting, we will not disturb his findings unless manifestly against the weight of evidence. The clerk's testimony that her first statement concerning the bag was induced by her conversation with appellant, and his denial of it, presents such a situation. In view of her testimony, when originally cross-examined, that she could not say whether there was a seal on the bag, of her constant denials that she had disturbed the bag in any manner, of the physical evidence tending to show that sealing wax had been used in the precinct on the occasion of this election, and of Laux's testimony as to a distinctive knot, which was undisturbed when the bag was produced at the trial, the trial court's finding, that the bag was produced in court in the same condition it was delivered, will not be disturbed.

Appellant makes no contention that the clerk's act of resealing the bag from precinct 2 constituted tampering but insists that because it remained unsealed over night there was presented a reasonable opportunity for unauthorized persons to tamper. We do not so interpret the evidence, for the judge of the precinct testified that, except for the new seal, the bag was in the same condition when produced at the trial, and the clerk testified that her house was locked up on the night in question. We are likewise unimpressed by counsel's argument that the security conditions under which the ballots were kept during the entire

period they were in the town clerk's custody is, even in the absence of evidence of actual tampering, conducive to a conclusion that the place and manner of their keeping was such as to reasonably afford an opportunity for unauthorized person to tamper. So far as appears from the record, ample precautions were taken to safeguard the ballots all during the period. The house was locked until the canvass was completed and from that time on they were constantly within the contemplation of the clerk's son who, though physically an invalid, was in full possession of all his faculties. The fact remains too that the ballot bags were produced in open court in the same condition that they were delivered to the clerk. It is our conclusion, therefore, that the evidence introduced by the appellee contestant amply proved that the ballots had been preserved in such a manner as to retain their probative force.

The evidence also discloses that the election judges in several precincts failed to wire the ballots or seal the knots after the ballots were strung and that, in every instance, no official impression was made in the sealing wax on the bags, all of which are prescribed in section 17-20 of the Election Code. (Ill. Rev. Stat. 1953, chap. 46, par. 17-20.) These omissions are advanced by appellant as being a failure to even substantially comply with the statute sufficient to establish that the ballots in this cause were not properly preserved. We have held, however, that the statutory provisions for preserving ballots are directory in the sense that the precise manner prescribed is not essential if there is a substantial compliance, and it is clearly proved the ballots have been kept in the same condition as when counted and protected from any opportunity for interference with them. Likewise, it is the rule that if the method pointed out by the statute is not pursued, the evidence must be clear and satisfactory that the method adopted was such that there was no reasonable opportunity for unau-

thorized persons to interfere with the ballots. (*Graham* v. *Peters,* 248 Ill. 50; *Bullman* v. *Cooper,* 362 Ill. 469.) Again, it is held in *Porter* v. *Greening,* 347 Ill. 434, that even if the ballots have not been strung, sealed and kept in the precise manner directed by statute, the disregard of the statutory provisions is not conclusive against their weight as evidence. Applying these authorities to the facts of this case, we find nothing in the omissions complained of which could be said to have created such reasonable opportunity for unauthorized interference with the ballots as to render them invalid as evidence. The trial court, therefore, did not err in admitting them in evidence.

The result we have reached upon the assignments of error which go to the sufficiency of the evidence to establish the integrity of the ballots as evidence leaves but one more point to consider. Appellant, it appears, filed a motion to dismiss contestant's petition and statement of grounds, first, because the petition was not verified as required by law and, second, because all of the grounds for contest were alleged upon information and belief, which appellant interprets as being too general, vague, indefinite and uncertain to state a cause of action. The trial court denied the motion and its action is assigned as error.

With regard to the complaint against the sufficiency of the verification, we find that this court has heretofore given its approval, in *Farrell* v. *Heiberg,* 262 Ill. 407, to a verification couched in precisely similar terms. We find no justification or reason of law in this proceeding to depart from what was said in that case and for the reasons there stated, we conclude that the verification here sufficiently complied with the law.

The contention that the petition and statement of grounds fail to state a cause of action is bottomed on the fact that the allegations which recited that appellee would

have received more votes, and the appellant fewer, had the votes been properly counted, are based upon information and belief. While it is stated in *Joyce* v. *Blankenship,* 399 Ill. 136, relied upon by appellant, that the allegations in an election contest should not be so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well-defined cause, we find the rule to be, where the question has been specifically dealt with, that a petition to contest an election is not required to contain only such allegations of fact as are within the contestant's personal knowledge. As stated in *Smith* v. *Township High School District,* 335 Ill. 346, to have such a requirement would be impracticable, because the very nature of the proceeding compels the contestant to rely largely upon information obtained from other sources and persons, making it obvious that as to such information, the contestant can only make oath that he believes the allegations to be true. To similar effect is the case of *MacGuidwin* v. *South Park Comrs.* 333 Ill. 58, where it is held that any greater requirement for precision of pleading in such cases would only serve to nullify the law which permits and designs that fraud or error in election returns should be investigated. We hold, therefore, that the allegations in the present case were, under the circumstances of the case, sufficient to state a cause of action and that the trial court properly denied the motion to dismiss.

Under the circumstances of this case it is our conclusion that the circuit court of Logan County properly held the ballots pertaining to this election were admissible in evidence, and its judgment that appellee was the duly elected supervisor is affirmed. *Judgment affirmed.*